**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

MARK L. GARVEY,

              Plaintiff,

vs.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

            Defendant.

No.  15-CV-00136-CJW

**MEMORANDUM OPINION AND**
**ORDER**

———————————

**TABLE OF CONTENTS**

*I.  INTRODUCTION* ................................................................................2

*II.  FACTUAL BACKGROUND* ................................................................ 2

*III.  PROCEDURAL BACKGROUND* ....................................................... 8

*IV.  DISABILITY DETERMINATOINS AND THE BURDEN OF PROOF* ............ 9

*V.  THE ALJ'S FINDINGS* ..................................................................... 11

*VI.  THE SUBSTANTIAL EVIDENCE STANDARD* ..................................... 12

*VII.  DISCUSSION* .............................................................................. 13

    *A.  The ALJ's evaluation of Drs. Stientjes and Wright* .............................. 14

    *B.  The ALJ's determination of claimant's mental impairments* ................... 16

    *C.  Past relevant work of telephone solicitor* ......................................... 19

    *D.  ALJ's determination as to claimant's visual limitations* ........................ 21

*VIII.  CONCLUSION* ........................................................................... 23

## I. INTRODUCTION

Plaintiff, Mark L. Garvey (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for disability and disability insurance benefits (DIB), and supplemental security income (SSI) under Title II and XVI (respectively) of the Social Security Act, 42 U.S.C. §§ 405(g), 423, 1383(c)(3). Claimant contends the Administrative Law Judge (ALJ) erred when she failed to: (1) correctly apply the regulations in determining whether claimant's work as a telephone solicitor met the requirements of past relevant work; (2) properly evaluate the medical opinion evidence of Dr. Stientjes and Dr. Wright relating to work related limitations; (3) find that claimant's mental impairments were not severe at step two of the disability analysis; and (4) support with substantial evidence her determination in claimant's RFC that claimant's only visual limitation was limited peripheral vision.

## II. FACTUAL BACKGROUND

Claimant was born on September 14, 1953, is currently 63, and was 60 years old at the time of the hearing. AR 41. Claimant completed high school, some classes at a community college, which did not result in a degree, and was a member of the Air Force from 1975 to 1976. AR 42. Claimant's alleged onset date for purposes of his DIB claim is September 5, 2011, and his alleged onset date for his SSI claim is February 6, 2012. AR 271.

Claimant visited the emergency room on December 1, 2007, for vomiting, headaches, and photophobia. AR 424-25. Two days, later he returned to the emergency room for eye pain, redness, irritation, and photophobia. AR 420. On both occasions, claimant was found to be stable and was discharged, though he remained in pain. AR 423, 430. During an emergency room visit in April 2008, the emergency room doctor, Dr. Butler, noted that claimant had an inflamed retina. AR 403.

On June 20, 2012, Dr. John Kuhnlein performed a consultative examination. AR 474. Dr. Kuhnlein gave his opinion as to claimant's physical restrictions based on his

examination of claimant. AR 477. Dr. Kuhnlein opined that claimant had no restrictions in his ability to lift, push, pull, carry, sit, bend, grip objects, or use his upper extremities. AR 477-78. Due primarily to leg pain and poor ability to balance, Dr. Kuhnlein also restricted claimant to: occasionally using stairs; rarely standing, walking, stooping, or using his lower extremity; and never crawling, kneeling, using ladders, walking on uneven surfaces, or working on a production line. AR 477-78. Additionally, Dr. Kuhnlein found that claimant was not restricted in his vision, hearing, communication, and had no restrictions as to environments involving heat, cold, dust, or mist. AR 478. Dr. Kuhnlein did restrict claimant from using power tools and traveling. AR 478. Lastly, Dr. Kuhnlein performed a range of motion examination and found in every area, except the flexing of the neck, claimant could perform the full range of motion. AR 480-81.

Dr. Shannon Throndson was claimant's primary care provider. AR 485. Claimant called Dr. Throndson's office on May 11, 2012, and reported waking in the middle of the night while having a panic attack that immobilized him for five minutes. AR 486. On June 27, 2012, he stated that he felt depressed and Dr. Throndson prescribed defendant depression medication. AR 485.

On August 3, 2012, claimant attended a consultative examination with Dr. Harlan Stientjes, Ph.D., to which he drove himself, arrived on time, was well oriented, well groomed, and exhibited adequate eye contact. AR 88, 502-03. During the consultative exam, claimant responded to questions from the Beck Depression Inventory and Beck Anxiety Inventory which lead the consultative examiner to conclude he suffered from depressive and anxiety-based symptoms. AR 88, 503. The reported symptoms of depression included: "feelings of worthlessness, indecisiveness, difficulties concentrating, low energy, and fatigue," but he did not have suicidal or homicidal ideation. AR 88, 503. The symptoms of anxiety claimant reported were, "numbness or tingling, heart pounding, fear of the worst happening, feeling terrified, and fear of dying" and he also experience panic attacks about once a month. AR 503. During the exam, it was also determined that claimant could read well, had good content recall, and overall

average intelligence. AR 88, 503. In addition, claimant interacted with others acceptably, and claimant's safety judgment was intact, and claimant could tolerate changes in moderation. AR 504. Claimant reported using a computer for research. AR 503. Dr. Stientjes diagnosed claimant with major depressive disorder with anxiety, avoidant personality traits, and noted that claimant had problems with his primary support group and Dr. Stientjes gave claimant a GAF 55. AR 504.

Dr. Richard Kettlekamp treated claimant for his cardiovascular conditions. AR 519-40. Dr. Kettlekamp saw claimant for follow ups after the placement of cardiac stents in April and October 2007. AR 518, 522, 524. During both of these appointments, claimant denied blurred or double vision. AR 522, 525. On October 28, 2008, claimant visited Dr. Kettlekamp and claimant denied any blurred or double vision. AR 521. In April of 2010, claimant attended a one-year follow up and again denied blurred or double vision. AR 518. In April of 2010, Dr. Kettlekamp found trace ankle edema and trace foot edema. AR 519.

On May 16, 2012, claimant began going to the University of Iowa Clinic. At this appointment, claimant sought mental health services. AR 554. Dr. Stephen Russell determined that he had multifocal choroiditis, scattered chorioretinal scars on both eyes, outer retinal atrophy in claimant's left eye, and photoreceptor atrophy in claimant's right eye, as well as "[b]ranch retinal vein occlusion [in right eye] with extensive macular edema." AR 542, 546. Dr. Russell treated claimant's macular edema with Avastin. AR 546, 577, 581, 587, 591. In September of 2013, Dr. Russell increased the dosage of the depression medication prescribed to claimant and recommended therapy because claimant reported that his depression was worsening. AR 559, 561. In an October 2013 visit with Dr. Russel, claimant reported that his vision was less blurry, and was not experiencing any new floaters, flashes, or pain. AR 563. Also during this visit, claimant reports his blood sugar was 124 and the report notes his last A1C was 5.9. AR 563. At an appointment on November 27, 2013, claimant complained of throbbing eyes-strain pain

in both eyes resulting in a headache, caused by bright lights and looking at a computer screen. AR 573.

On April 2, 2014, claimant reported that his vision was stable and there had been no new floaters, flashes, or other increases in vision loss. AR 582. A few months later, in July 2014, claimant reported to Dr. Russell that his vision had worsened and that he was experiencing aching in the back of his eyes, which occurred a few times a week and lasted a few hours at each time. AR 588.

Dr. David Muller, who examined claimant on June 20, 2012, stated that claimant's visual condition seemed to be stable, his visual acuity was 20/25, and claimant was doing well. AR 496. The only limitation to claimant's vision mentioned in the letter by Dr. Muller was limited peripheral vision. AR 496-97.

Dr. Dee Wright, Ph.D., is a non-examining state agency medical consultant who reviewed the medical information provided by claimant, and the consultative examination, and evaluated complainant's mental health. AR 88. Dr. Wright concluded from reviewing the medical evidence that claimant "exhibits variable sustained attention/concentration," he would have difficulties performing "extremely complex cognitive activities that demanded prolonged attention to minute, complex details and rapid response rates." AR 89. But, Dr. Wright also concluded that claimant "is able to sustain sufficient concentration/attention and memory functioning to perform simple to moderately complex cognitive activities that do not require rapid response rates without significant limitations of function." AR 89. Ultimately, Dr. Wright found that claimant did not have serious impairments to his social functioning, and that claimant's condition did not meet or equal any listing. AR 89.

On reconsideration, complainant reported to the state disability office that his vision had worsened and that he now saw sparkly spots and rings. AR 112, 125. Dr. Jan Hunter, D.O., affirmed the Dr. Wright's finding that claimant was not disabled. AR 121, 135.

On February 23, 2012, claimant's wife at the time of the application submitted a function report. AR 282-89. Ms. Garvey indicated that her husband had trouble balancing and walking, that he walked with a cane, and that he could no longer lift, squat, bend, stand, reach, walk, kneel, see, or climb stairs as well as he used to. AR 287. Ms. Garvey also stated that claimant did not handle stress or changes in routine well, and that he could only maintain concentration for a few minutes. AR 287-88. She further stated that claimant performed light cleaning, helped take care of his grandchildren, shopped, drove, made balloon animals, and whittled. AR 283-86.

Claimant reported that his physical conditions were diabetes, heart stints, difficulty with balance, and deteriorating vision. AR 290. During a typical day, claimant stated that he would eat, try to walk for exercise, and occasionally make "balloon art" for his grandchildren. AR 291. He also regularly was able to assist his wife due to her health problems. AR 291. Claimant reported that he had no trouble taking care of personal needs, he cooked and cleaned on a regular basis, he could mow the lawn, drive, ride a bike and a motorcycle, and had no problems handling money. AR 293. He did state he had trouble sleeping due to nightmares. AR 291. He further reported he had poor balance, could not walk long distances, and had trouble lifting, squatting, bending, standing, walking, sitting, kneeling, climbing stairs, and had memory problems. AR 291-95. He emphasized his trouble seeing and concentrating. AR 295. He stated his vision problem was caused by scaring on his retina which caused "dead spots, floating black spots and distortion." AR 297. The scaring also caused photophobia. AR 297.

Claimant reported a worsening of symptoms after July 2012, which included an increase in severity and frequency of his panic attacks, his photophobia had worsened, he began to see sparkles in his vision, and his balance problems and severe headaches had worsened. AR 309. Claimant described his panic attacks as immobilizing. AR 325. He also reported numbness in his right hand causing him to drop things, and a reluctance to drive, though he continued to do so. AR 312.

In a personal pain and fatigue questionnaire completed September 28, 2012, claimant complained of pain in his left foot and ankle, as well as a shooting pain from his right wrist to his neck, and numbness in his right arm. AR 335-36. He stated that hot showers and exercise, like walking or swimming, helped to alleviate the pain. AR 336. He continued to report that his sleep was affected by his conditions. AR 336. He also stated that his concentration was affected to the extent that he would get lost while driving, forget to take a turn, or forget his destination. AR 337.

Claimant testified that he worked for 12 years as a truck driver and a warehouse worker, which involved: "driving forklifts, unloading and loading trucks, sorting, [and] carpeting." AR 43. This also included driving around Iowa delivering the carpeting. AR 43. Claimant stated that he left this position due to a deterioration in his vision due to an eye infection and he no longer felt safe driving. AR 44. Claimant also reported that he worked for Parsons Technology for five months in 1999, and prior to that had worked for Robert's Dairy for approximately two years. AR 44. Claimant also worked a few hours, sporadically, as a magician and balloon animal creator. AR 45.

During a typical day, claimant reported that he assisted his daughter, whom he lived with, by cleaning the house, doing dishes, preparing meals, picking up and dropping off his granddaughter at preschool, and helping take care of the cats and guinea pigs. AR 46. Claimant stated that he drove to his granddaughter's preschool, drove to the store occasionally, and had driven to the hearing that day. AR 46, 48. Claimant testified that he did not participate in any social activities, did not go out to movies or other entertainment activities, and most of his social interaction was with his daughter and granddaughter. AR 49-50. He also stated he used to whittle, but quit a year and a half before the hearing because of fear of cutting himself after an accident where he did injure himself. AR 49-50.

Claimant's attorney examined him at the hearing about claimant's vision problems. AR 52. Claimant testified that he had blind spots on both sides of his head, a sparkly glitter ring that was permanently in the vision of his left eye. AR 53. Claimant's vision

also contained black moving spots. AR 53. Stated that his vision would likely continue to get worse, the doctors he had seen did not know the specific cause, and the doctors had not offered any treatment other than maintenance for his condition. AR 54.

Claimant reported during the hearing he had cardiac stents and diabetes, which claimant reported was well controlled. AR 55. He also reported that he got headaches behind his eyes due to his eye condition and claimant reported that the headaches were daily and that once the headache began, it would remain for the remainder of the day. AR 58. Claimant also stated he took medication for anxiety because he suffered from panic attacks. AR 55-56. Claimant also reported depression, which was mostly brought on by personal relationship problems. AR 57. Claimant stated that he was receiving counseling from the Veteran's Administration. AR 61.

He testified that he rode a bicycle for transportation and exercise. AR 62. He stated that he quit his prior employment because of his eye problems, combined with an altercation with his supervisor which was the "trigger" for him to quit. AR 63. The vocational expert testified that she believed claimant could return to being a telephone solicitor with his limitations, unless one of the limitations involved a decreased ability to concentrate. AR 69-70. Claimant stated he felt that his vision problems and problems with light sensitivity would preclude him from working as a telephone solicitor because staring at the computer screen would trigger his headaches. AR 59-60.

### III. PROCEDURAL BACKGROUND

Claimant filed for disability and disability insurance benefits and supplemental security income on February 6, 2012. AR 14. Claimant alleged he became disabled on September 5, 2011. AR 14. Both applications were denied initially on September 14, 2012, and upon reconsideration on November 12, 2012. AR 14. On December 13, 2012, claimant requested a hearing with an ALJ, and claimant appeared for a video hearing conducted by Administrative Law Judge Tela L. Gatewood on December 18, 2013. AR 14. Vocational expert, Julie A. Svec, also appeared at the hearing. AR 14.

The ALJ rendered her decision August 5, 2014, finding claimant not disabled, and the Appeals Council declined to review claimant's case on September 25, 2015.  AR 1, 30.

On April 12, 2016, the parties consented to allow the final disposition of the case to be entered by a United States Magistrate Judge.  Doc. 8.  The parties submitted briefing on the issues arising in this case (Doc. 14, 15), and the case was ready for decision on July 11, 2016.

## IV.  DISABILITY DETERMINATOINS AND THE BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905 (2016).  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the "ALJ follows the familiar five-step process, considering whether: (1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work."  *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).  *See Kelley v. Callahan,* 133 F.3d 583, 587–88 (8th Cir. 1998).  If at any step the Commissioner can make a disability determination, disabled or not disabled, then the analysis will be terminated at that step and that determination of disability will be the final determination of the Commissioner.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The first step in the process is determining whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Substantial gainful activity is "work activity that involves doing significant physical or mental activities" and "the claimant does for pay or profit." 20 C.F.R. § 220.141 (2016).

Second, the ALJ must consider whether the claimant: (1) has a physical or mental medically determinable impairment(s); (2) has an impairment or combination of impairments that is "severe." *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4). An impairment is severe if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

Third, if the ALJ has found that the claimant is not engaged in substantial gainful activity and that he has at least one or a combination of impairments that is severe, the ALJ will determine if any of these impairments meet or are equivalent to a listing. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(iii), 416.920(a)(4).

At this point in the analysis, the ALJ will determine the claimant's residual functional capacity (RFC), which is the most physical and mental ability a claimant has despite the physical and mental limitations that their impairments may impose. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(vi), 404.1545(a), 416.945(a). After the ALJ has determined the claimant's RFC she will use that to determine whether, with the limitations from claimant's impairments, claimant can engage in any past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Lastly, if the claimant cannot engage in any past relevant work, the ALJ will determine if there is any work in the local or national economy that the claimant could perform, based on their RFC, age, education and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). During this last step, the burden shifts to the Commissioner to prove that there exist "a significant number of other jobs in the national economy." *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

A claimant bears the burden to prove disability and submit the evidence required to make the disability determination. The claimant is responsible for providing evidence

the Commissioner will use to make a finding as to the claimant's impairments, their severity and limitations, and RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

## V. THE ALJ'S FINDINGS

The ALJ engaged in the analysis outlined above and found claimant not disabled at step four of the analysis.

At Step 1, the ALJ found claimant was not gainfully employed and had not engaged in substantial gainful activity since September 5, 2011, the alleged onset of disability date. AR 17.

At Step 2, the ALJ determined claimant had the following medically determinable impairments: vision limitations, diabetes mellitus, hypertension, obesity, depression, anxiety, avoidant personality disorder, and musculoskeletal pain. AR 17-18. The ALJ found claimant's impairments of vision limitations, diabetes mellitus, hypertension, and obesity to be severe under 20 C.F.R §§ 404.1520(c), 416.920(c). *Id.*

At Step 3, the ALJ found that claimant did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 18. At this step, the ALJ also engaged in the required analysis under 20 C.F.R §§ 404.1520a, 416.920a. AR 20. She found that claimant's mental impairments of depression, anxiety, and avoidant personality disorder mildly affected his ability to carry out activities of daily living, mildly affected his social functioning, mildly affected his concentration, persistence, or pace, and that claimant had no episodes of decompensation. *Id.*

At Step 4, the ALJ found claimant had the RFC to perform a range of medium work. AR 21. The ALJ determined: claimant could lift and/or carry and push and/or pull fifty pounds occasionally, twenty-five pounds frequently," stand and walk, on level terrain and with normal breaks for six hours in a workday. *Id.* She also found that he could sit for six hours in a workday, but could not climb ladders, ropes, or scaffolds, work at unprotected heights or around hazards. *Id.* Lastly, the ALJ found that claimant had limited peripheral vision. *Id.* After determining claimant's RFC, the ALJ found that claimant could return to his past work as a telephone solicitor. AR 29. Finding that claimant could return to his past work, the ALJ found claimant not disabled at any time within the relevant period. *Id.* Accordingly, the ALJ did not proceed to Step 5.

## VI. THE SUBSTANTIAL EVIDENCE STANDARD

"The court's task is to determine whether the ALJ's decision 'complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.'" *Halverson*, 600 F.3d at 929 (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010).

This standard is "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citing *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991)) (internal quotes omitted). "We will disturb the ALJ's decision only if it falls outside the available 'zone of choice.' An ALJ's decision is not outside the 'zone of choice' simply because we might have reached a different conclusion had we been the initial finder of fact." *Nicola v. Astrue*, 480 F.3d 885, 886-887 (8th Cir. 2007) (citing *Culbertson*, 30 F.3d at 939). "If, after

review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Kluesner*, 607 F.3d at 536.

In reviewing the Commissioner's decision, all of the evidence in the record will be considered, including evidence that does not support the Commissioner's decision. *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citing *Krogmeier v. Barnhart,* 294 F.3d 1019, 1022 (8th Cir. 2002)). "We do not reweigh the evidence, and we defer to the commissioner's credibility determinations if they are supported by good reasons and substantial evidence." *Id.* (citing *Gonzales v. Barnhart,* 465 F.3d 890, 894 (8th Cir. 2006)) (internal quotations omitted).

## VII.  DISCUSSION

Claimant argues the ALJ's decision is flawed for four reasons:

1.    Claimant argues the ALJ erred because she failed to properly evaluate the medical opinion evidence of Dr. Stientjes and Dr. Wright relating to work-related limitations.  Doc. 14, at 9.

2.    Claimant argues the ALJ failed to find that claimant's mental impairments were not severe at step two of the disability analysis.  Doc. 14, at 12.

3.    Claimant argues that the ALJ erred in her application of the regulations in determining claimant's work as a telephone solicitor met the requirements of past relevant work.  Doc. 14, at 13.

4.    Claimant argues the ALJ's determination of claimant's residual functional capacity is not supported by substantial evidence.  Doc. 14, at 3.

The Court will address these arguments separately below.

## A. The ALJ's evaluation of Drs. Stientjes and Wright

Claimant argues that the ALJ did not adequately evaluate the medical opinion evidence of doctors Stientjes and Wright. Doc. 14, at 9. The Commissioner argues that the ALJ's consideration of the opinions of Dr. Stientjes and Dr. Wright were proper. Doc. 15, at 13.

The ALJ is required to consider certain factors in evaluating the opinion evidence of medical sources, which are set out in 20 C.F.R. § 404.1527(c). The factors are: examining relationship, treatment relationship, supportability, consistency, and specialization. 20 C.F.R. § 404.1527(c)(1)-(6). When considering the treatment relationship, the ALJ must also consider the length of the treatment relationship and how many times the medical source saw the claimant. 20 C.F.R. § 404.1527(c)(2). The Court will "not reweigh the evidence presented to the ALJ, and it is 'the statutory duty of the ALJ, in the first instance, to assess the credibility of the claimant and other witnesses.'" *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (quoting *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir.1995)). It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). *See Phillips v. Colvin*, 721 F.3d 623, 629 (8th Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)) (finding the ALJ properly resolved conflicts in medical opinion testimony about a claimant's IQ scores by comparing the medical evidence with other evidence on the record). "As a general matter, the report of a consulting physician who examined a claimant once does not constitute 'substantial evidence' upon the record as a whole . . . ." *Wagner v. Astrue*, 499 F.3d 842, 849 (8th Cir. 2007) (internal quotation omitted).

The Court finds that the ALJ appropriately considered the factors of 20 C.F.R. § 404.1527 when evaluating the medical opinion evidence of Dr. Wright and Dr. Stientjes and assigning a weight to those opinions. The ALJ gave some weight to Dr. Stientjes' medical opinion and gave Dr. Wright's medical opinion, as claimant's physical ability, significant weight, and some weight to Dr. Wright's opinion as to claimant's mental

limitations. AR 26-27, 29-30. In limiting the weight given to Dr. Stientjes' medical opinion as to claimant's mental functioning, the ALJ noted that Dr. Stientjes had only examined the patient once and reported that claimant was fully oriented, denied self-harm, compulsions, delusions, obsessions, and aggressive tendencies. AR 26. The ALJ also noted Dr. Stientjes' reported claimant read fluently, had good content recall and inferential comprehension, claimant articulated normally, and attempted to make jokes. AR 26. The ALJ also relied on claimant's reports of daily activities, including running errands and caring for his grandchildren and his lack of specialized treatment for mental health problems. AR 26.

The ALJ appropriately discussed her reasoning in not giving substantial weight to Dr. Stientjes' GAF score. The credibility and weight given to evidence is a question for the ALJ and the Court will not reweigh medical evidence if the ALJ gave good reasons for giving the medical evidence the weight that she did. The ALJ gave very little weight to the GAF, stating that it was a subjective test not intended for forensic purposes and citing the DSM–IV and the decision of the Commissioner not to endorse the use of the GAF in disability determinations. AR 26. *See* Fed. Reg. 50,746, 50,764-65 (Aug. 21, 2000); *Jones v. Astrue*, 619 F.3d 963, 974 (8th Cir. 2010) (citing *DeBoard v. Comm'r of Soc. Sec.*, 211 Fed. App'x. 411, 415 (6th Cir. 2006)).

Dr. Wright was a non-examining consultant who evaluated the record at the time of initial consideration of claimant's claim and relied heavily on the psychological opinion of Dr. Stientjes. AR 104-06. The ALJ limited the weight given to Dr. Wright's, as well as the other state agency psychological consultant's, opinion of claimant's mental impairments, citing lack of explanation for the determination that claimant had mild restrictions, claimant's testimony about his daily activities, and Dr. Wright's reliance on Dr. Stientjes' opinion. AR 29. The Court finds the ALJ applied the appropriate factors in evaluating the medical opinion evidence, and engaged in a thorough discussion of those factors as related to claimant's mental health, including the weight given to the opinions of Dr. Stientjes and Dr. Wright.

***B. The ALJ's determination of claimant's mental impairments***

Claimant argues that the ALJ's finding that claimant's mental impairments were not severe at step two is not supported by substantial evidence. Doc. 14, at 12. Specifically, claimant argues that the ALJ did not properly apply the psychiatric review technique laid out in 20 C.F.R. 404.1520a. The Commissioner argues that claimant failed to meet his burden of establishing a mental impairment or combination of impairments that was severe. Doc. 15, at 11.

At the second step of the five step sequential process, a claimant must have a medically determinable impairment(s) and that impairment or a combination of impairments must be severe. At step two, the burden is on claimant to prove both that he has a medically determinable impairment and that the impairment is severe. *See Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000); 20 C.F.R. § 404.1512(a). A "mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. § 404.1508. A severe impairment is any "impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

At the second step of the analysis, when a claimant may be disabled due to a mental impairment, the ALJ is required to conduct an analysis under 20 C.F.R. § 404.1520a, to determine the severity of the mental impairment. *Cuthrell v. Astrue*, 702 F.3d 1114, 1117 (8th Cir. 2013) (citing *Nicola*, 480 F.3d at 887). This analysis requires the ALJ to assess and document in her decision four functional areas to which the ALJ must assign a rating. 20 C.F.R. § 404.1520a(b)-(e). The four functional areas are activities of daily living, social function, concentration, persistence, or pace, and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(2).

Claimant argues that the ALJ did not meet the requirements of 20 C.F.R. § 404.1520a(e), because the ALJ's opinion did not state the "significant history, including examination and laboratory findings, and the functional limitations that were considered

in reaching a conclusion about the severity of the mental impairment(s)." 20 C.F.R. 404.1520a(e)(4). Although it would have been preferable for the ALJ to have included additional analysis in the section where she evaluated the four functional factors, the Court finds the ALJ adequately supported her decision that claimant's depression was not severe under her Step 5 analysis of claimant's medical evidence for purposes of determining claimant's RFC.

In Step 5 of the ALJ's analysis, she discussed claimant's entire mental health history, including his initial discussions of depression with his primary care physician, as well as the psychological consultant Dr. Stientjes's findings from administering the Beck Depression and Anxiety inventories. AR 25-26. The ALJ's discussion of Dr. Stientjes' findings also included his opinion based on his testing of claimant's memory, concentration, and verbal skills in interacting with others. AR 26. The ALJ also discussed claimant's reports of his daily activities in conjunction with the opinion of Dr. Stientjes and as testified to at the hearing and their consistency with claimant's alleged symptoms. AR 26-27. The ALJ also went on to discuss the findings of the state agency consulting psychologists in determining the severity of claimant's mental impairments and the psychiatric review conducted at the initial and reconsideration stages. AR 28-29. The psychiatric review reported by the state agency consultant was the same as the ALJ's rating of the four functional areas, but the ALJ rated claimant's difficulties in maintaining concentration as "mild" rather than "moderate." AR 20, 28. The Court finds that while the ALJ could have discussed the reasoning supporting her rating of the functional factors in Step 4, the ALJ adequately discussed them at Step 5.

The Court also finds that substantial evidence in the record as a whole supports the ALJ's finding of non-severity. The ALJ completed the psychiatric review finding claimant was mildly restricted in activities of daily living, social functioning, and concentration, persistence, or pace. AR 20. In the fourth category, episodes of decompensation, the ALJ found that claimant had no episodes of decompensation. AR 20. "If [the ALJ] rate[s] the degree of your limitation in the first three functional areas

17

as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). The ALJ correctly applied the regulation and found claimant's depression not severe.

There is additional evidence on the record supporting the ALJ's finding of non-severity. Claimant reported a history of depression for which he took medication prescribed to him by Dr. Throndson in May of 2012, after his disability application in February of 2012. AR 14, 485. Claimant did not allege a mental disability in his original application. AR 75, 93. Dr. Throndson prescribed the medication for claimant's depression over the phone and there is no evidence that Dr. Throndson ever evaluated claimant in person for depression before prescribing him this medication. AR 452, 485. The only professional evaluation for depression on the record is the consultative evaluation of Dr. Stientjes, to which the ALJ assigned some weight. AR 26. The ALJ noted that Dr. Stientjes opined claimant could understand and remember oral and written directions that were mildly complex, claimant's safety judgment was marginally intact, claimant could tolerate changes as long as they came in moderation, and that interactions with others were acceptable, even though claimant distanced others with excess verbalization. AR 26. The ALJ also noted that claimant had "mild issues with inattention and failure to maintain overall vigilance," all of which the ALJ took into account in determining that claimant had "mild" difficulties with concentration. AR 20, 26, 503-04. Dr. Stientjes also reported that claimant read fluently and that his reading comprehension and content recall was intact. AR 26, 503. Dr. Stientjes further reported claimant correctly repeated a sentence and followed a three step instruction. AR 503.

Furthermore, claimant testified at the hearing that indicates that the medication that he was on was improving his depression, as he reported that he went off the medication and then determined when his symptoms came back that he needed to continue to take the medication. AR 56. Claimant's reported daily activities also tend to demonstrate claimant had only mild concentration difficulties such as researching and learning new "tricks" and taking care of his grandchildren. AR 26. The ALJ also gave

some weight to the non-examining opinion of the state agency consultant and the ALJ closely followed that opinion, differing only in her determination of the extent to which claimant's concentration was affected. AR 28. The Court finds that there was substantial evidence on the record to support the ALJ's finding that claimant's depression was non-severe.

### C. Past relevant work of telephone solicitor

Claimant argues that the ALJ failed to develop the record as to claimant's duration and whether claimant learned the skills required for claimant's work as a telephone solicitor. Doc. 14, at 13. The Commissioner argues that claimant's counsel had the burden to question the vocational expert about whether the skills from the work as a telephone solicitor would be transferrable after the amount of time that had passed. Doc. 15, at 17-18.

The threshold inquiry is whether the ALJ could properly consider claimant's work as a telephone solicitor in 1999 as past relevant work. It is a close question, as claimant states in his brief, as to whether the ALJ issued her decision within the 15 year recency requirement, to qualify as past relevant work under of 20 C.F.R. § 404.1565(a). Doc. 14, at 15. "We consider that your work experience applies when it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity. We do not usually consider that work you did 15 years or more before the time we are deciding whether you are disabled . . . ." 20 C.F.R. § 404.1565(a) (2016). *See Muller v. Astrue*, 561 F.3d 837, 841 (8th Cir. 2009). "However, work performed prior to the 15–year period 'may be considered as relevant when a continuity of skills, knowledge, and processes can be established between such work and the [claimant's] more recent occupations.'" *Pickner v. Sullivan*, 985 F.2d 401, 403 (8th Cir. 1993) (stating that work performed prior to 15 years before adjudication is "ordinarily" not considered relevant because of the gradual change in job skills over time) (quoting SSR 82–62, at 401 (effective Aug. 20, 1980)).

Claimant reported that he worked as a telephone solicitor from March 1999 to August 1999.[1]  *See* AR 44, 276.  The hearing was held December 18, 2013, and the ALJ issued her decision on August 5, 2014.  AR 30, 72.  There is no place in the record, and claimant does not assert in his brief, an exact date when claimant ended his employment with Parsons as a telephone solicitor.  To meet the 15 year recency requirement, claimant would have to have worked as a telephone solicitor after August 5, 1999.  Claimant must carry the burden at step four to prove that he could not return to his past work and here that would require claimant to prove that he terminated his employment before August 5, 1999, and was, therefore, not past relevant work that could be considered.  Although it is a close question, the Court finds it was reasonable for the ALJ to find, and there was substantial evidence on the record to support, that claimant worked as a telephone solicitor within 15 years of the ALJ's decision.

Claimant also argues that the ALJ did not fully develop the record as to claimant's past relevant work and argues that claimant did not have the requisite ability to perform the job of telephone solicitor and never performed the work adequately.  "[T]he ALJ has a duty to *fully* investigate and make *explicit* findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant herself is capable of doing before he determines that she is able to perform her past relevant work."  *Nimick v. Sec'y of Health & Human Servs.*, 887 F.2d 864, 866 (8th Cir. 1989) (emphasis original).

The ALJ found that claimant performed the job of telephone solicitor "long enough to meet the longevity required for this semiskilled job."  AR 29.  There exists no evidence on the record to suggest, and claimant's attorney never addresses at the time of the

---

[1] The Court notes that in claimant's report of his past relevant work, claimant misstated the dates he worked for Parsons as a telephone solicitor, stating the year he worked as 2009 rather than 1999.  However, claimant testified at the hearing that he worked as a telephone solicitor for five months, which is consistent with the time range of March to August reported by claimant.  AR 276.  Claimant also seems to accept August 1999 as the applicable end date of employment.  Doc. 14, at 15.

hearing, that claimant failed to possess the physical and mental skills necessary to perform the job or that he never learned to perform the job at an acceptable level. The only evidence on the record that claimant did not perform the "average performance" for the job is his own subjective testimony stating: "Well, I found out I'm really not a salesperson. I just don't have the skill. And I don't have – I guess I just don't have the ability to try to talk people into buying something they don't really want to buy." AR 44. The ALJ interpreted this statement as reflecting a lack of desire to do this type of work, rather than claimant being unable to perform the job adequately. AR 29. ALJs are in the best position to determine a claimant's credibility, because they are present during the testimony of claimant and can observe claimant's demeanor and personal appearance. *See Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) *(citing Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir.2006)). *See also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Bailey v. Astrue*, No. 1:09–CV–43, 2009 WL 5176156, *15 (Dec. 21, 2009) (finding an ALJ did not err in his credibility finding where he considered the claimant's statement that he did not desire to work, in conjunction with the objective medical evidence and claimant's work history).

### D. ALJ's determination as to claimant's visual limitations

Claimant argues that the ALJ erred because the RFC determination that claimant had only "limited peripheral vision," is not supported by substantial evidence. Doc. 14, at 3-4. The Commissioner argues that the burden was on claimant to prove the severity of his visual limitations and he did not prove they were more severe than found by the ALJ. Doc. 15, at 7. The Commissioner further argues that any deficiency in the ALJ's opinion, when supported by substantial evidence, is harmless error. Doc. 15, at 9.

A claimant's "residual functional capacity is the most [claimant] can still do despite [claimant's] limitations." 20 C.F.R. § 404.1545(a)(1). The RFC also takes into account all the relevant evidence in the record including both severe and non-severe impairments, but it is claimant's responsibility to develop the record as to claimant's RFC. 20 C.F.R.

§ 404.1545(a)(1)-(2). The RFC is a medical question and must be supported by some medical evidence. *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 378 (8th Cir. 2016) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)).

The Court finds that the ALJ's determination of claimant's RFC is supported by substantial evidence on the record. The opinion of Dr. Muller, an eye specialist, who saw claimant June 20, 2012, stated claimant had fairly good visual acuity, his retinal problems were stabilized, and only listed decreased peripheral vision as a limitation. AR 496-97. This is consistent with the determination of Dr. Kuhnlein who rated claimant's visual acuity as 20/20 in the right eye and 20/25 in the left eye, and opined no visual restrictions. AR 76, 78.

On October 9, 2013, claimant stated that his blurriness was gone after receiving treatment and denied new floaters, flashes, or pain, indicating that the treatment he was receiving at the University of Iowa was working. AR 563. Furthermore, claimant stated to Dr. Russel that after receiving treatment for his vision problems, that his vision had improved. AR 563. At later appointments, claimant reports a throbbing pain in his eye, but he received additional treatment, and then reported doing well and had no new complaints at the next appointment, despite his floaters and dysphotopsia. AR 578. Several months later, after continuing treatment, in April 2014, claimant reported his vision was stable, he had no new flashes of light or floaters, no metamorphopsia, no new photophobia, and no other visual complaints.

The ALJ also addressed claimant's diabetes, obesity, cardiac stent, and hypertension, as well as left leg and ankle pain. AR 22-25. With regard to claimant's obesity, the ALJ considered the effect claimant's obesity had on his other impairments. AR 25. The ALJ also found, based on the evidence in the record, that claimant's cardiac impairments and his diabetes were stable. AR 23.

The ALJ also considered claimant's statements as to seeing floaters and "sparkly" rings in his vision, but the ALJ found that claimant's reported daily activities undermined claimant's alleged severity of these problems. Claimant did not stop driving due to his

visual impairment, drove himself to the hearing with the ALJ, and even reported that he continued to ride a motorcycle after applying for disability. AR 293, 329. Additionally, he continued to drive a semi for over four years after his visual problems allegedly began in 2007, until he quit his position after an altercation with his supervisor. AR 22, 62. The ALJ noted in her decision that claimant's reported limitations were also undermined by his reports of his ability to complete his personal care and household chores with no difficulty, performing yard work such as mowing, grocery shopping, taking care of financial matters, and caring for his grandchildren. AR 27. Claimant also reported spending time on the computer researching new "tricks" and reading on his tablet, which undermined his statements about having difficulty looking at screens. AR 26, 47, 329. The Court finds that the ALJ's decision is supported by substantial evidence on the record.

## VIII. CONCLUSION

For the reasons set forth herein, and without minimizing the seriousness of plaintiff's impairments, the Court **affirms** the Commissioner's determination that claimant was not disabled. Judgment shall be entered against plaintiff and in favor of the Commissioner.

IT IS SO ORDERED this 8th day of March, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa